## C. McBRIDE ET AL V. B. A. BANGUSS ET AL.

(Case No. 1900)

1. EVIDENCE—CHARGE.—In civil cases juries should ordinarily find in accordance with the preponderance of the evidence, and a charge requiring a plaintiff to produce "satisfactory evidence," or "clear and satisfactory evidence," might be understood to mean a higher degree of proof than is furnished by a preponderance of the evidence, this is especially so when the language is often repeated.

2. SPECIAL INSTRUCTIONS.—The giving of special instructions on points covered by the general charge is not to be commended, but unless they are erroneous or objectionable in form, they furnished no ground for reversal.

3. BOND FOR TITLE — VENDOR'S LIEN — PURCHASE MONEY — TECHNICAL ERRORS — EQUITY — PURCHASER FOR VALUE.— The vendee of a tract of land paid $450 cash, leaving $800 of the purchase money unpaid, the $450 being of his wife's separate means. The vendor made a bond for title, binding himself to make a good deed upon payment of the $800 and interest. The land was sold under execution sale in 1873 as the property of the vendee, the $800 being still unpaid It was bought by the creditor and another party for $200, that sum being credited on the execution. In 1874 the $800 with interest was paid to the vendor by the firm of M. & L., and title was made to them. Suit was brought for the land by the purchasers at sheriff's sale. *Held:*

(1) That on failure of the vendee to pay the purchase money, the vendor could rescind the contract and sell the land to another.

(2) That in view of the facts, the court below did not err in giving the charge, "the proof must show that the whole of the purchase money for the land was paid with the vendee's money, to entitle the plaintiffs to recover."

(3) That a judgment will not be reversed because of technical errors committed upon the trial below, if upon the pleading and evidence, no other judgment than the one rendered, could have been legally rendered.

(4) Plaintiffs acquired by their purchase only such rights as the vendee had at the time of the sheriff's sale. Under the pleading and evidence they would not be entitled to recover even against the vendee, were he clothed with the legal title, by paying the balance of the purchase money, unless they tendered him the balance of the purchase money, for as against him they would not exhibit any superior right.

(5) They acquired at most but the right to have title to the land by paying the balance due on it, and this was subject to be defeated by a failure of the vendee, or his vendees, to pay their balance.

(6) When the firm of M. & L. purchased the land for themselves or for the benefit of the vendee, their legal title was superior to any alleged by plaintiffs, and the equities of M. & L. were as strong as those asserted by plaintiffs.

(7) If M. & L. paid the balance of the purchase money for the vendee, and held the title for his benefit, the plaintiffs had the right to pay the balance of the purchase money and have title, just as if the vendor had not conveyed to M. & L.; but in no case could they recover without paying or tendering the purchase money.

(8) If M. & L. bought the land, even with notice of the prior contract, for their own use and with their own means, their title could not be divested even on tender of the purchase money.

(9) The vendee had no real interest in the land, since it was purchased for

his wife with the intention that it should be paid for with her separate means, and the $450 paid on it was of her separate estate. Plaintiffs took nothing as against her by their purchase, even if they had no notice of her rights, for it was not shown that they paid value. (McKamey v. Thorp, 61 Tex., 648.)

APPEAL from Cass. Tried below before the Hon. W. P. McLean.

The opinion states the case. Among other things, appellants claim in their fifth assignment of error that the court erred in charging the jury, "the proof must show that the whole of the purchase money for the land was paid with the defendant's (B. A. Banguss) money to entitle plaintiff to recover."

*C. M. McBride* and *F. M. Henry*, for appellants, on the rescision of the contract, cited : Milligan v. Ewing, 64 Tex.; Thomas v. Beaton, 25 Tex., sup. 318 ; Scarborough v. Arrant, 25 Tex., 129 ; Coddington v. Wells, 59 Tex., 49 ; Tom v. Woolholfer, 61 Tex., 277 ; Estell v. Cole, 62 Tex., 701 ; Mooring v. Lyon, 62 Tex., 309.

*G. T. Todd* and *G. T. Vaughan*, for appellees, cited : Milligan v. Ewing, 64 Tex.; Scarborough v. Arrant, 25 Tex., 129 ; Coddington v. Wells, 59 Tex., 49 ; Tom v. Woolholfer, 61 Tex., 277 ; Estell v. Cole, 62 Tex., 701.

STAYTON, ASSOCIATE JUSTICE.—This is an action brought by C. McBride and F. M. Henry against B. A. Banguss, James A. Banguss, J. E. D. Blades, C. B. Mooring and Thomas L. Lyon, the last two of whom comprised the firm of Mooring & Lyon, to recover the land in controversy. The action is one in form of trespass to try title, in which the petition sets out the title of the plaintiffs and defendants, as claimed by the former. It is alleged that the appellant, McBride, as the administrator of the estate of Davis, obtained a judgment against B. A. Banguss under which the land in controversy was sold, and that at that sale the appellants, McBride and Henry, became the purchasers and received a deed from the sheriff.

It is further averred that at the time they bought, Banguss held the land under a bond for title executed by Blades, conditioned that he would make title to Banguss when the purchase money was paid, and that, at the time they bought, Banguss had paid about four hundred and fifty dollars of the purchase money, which left about eight hundred dollars, besides interest, unpaid. This, they allege, was subsequently paid by Banguss through Mooring & Lyon, and that through a conspiracy between Blades, Banguss, Mooring & Lyon and others, Blades made a deed to the land to Mooring & Lyon, to be held by them in trust for Banguss, for the purpose of defrauding the plaintiffs.

The prayer is for the recovery of the land and for rents, but they make no offer to pay any part of the purchase money unpaid at the time of their purchase. The defendants deny the averments of the petition, plead not guilty, and further allege that such contract as existed between Blades and Banguss was executory, and that, in fact, the contract to purchase the land was made for the benefit of the wife of Banguss, and that it was by the parties thereto cancelled long before the purchase by Mooring & Lyon.

The evidence shows that the plaintiffs did purchase the land under an execution against B. A. Banguss in favor of McBride, as administrator, but it does not show that either of them ever paid anything for the land, otherwise than by having the amount of their bid credited upon the execution. It further shows that, prior to their purchase, Blades, who was the owner of the land, did execute a bond to Banguss, conditioned to make title to him upon payment of the purchase money, but that this contract was made for the benefit of the wife of Banguss, with intent to acquire title to her in her own separate right.

The money paid was of her separate estate, and it was contemplated that the unpaid balance should be paid with money derived from the same source; but she was disappointed in obtaining the money which she expected to receive, and therefore it appears from the evidence that the contract for the conveyance of the land was rescinded after the appellants purchased. That Blades conveyed the land to Mooring & Lyon after the plaintiffs had purchased at sheriff's sale, and that they subsequently sold to Samuel L. Williams and J. A. Banguss, is not controverted. Nor is it controverted that the entire purchase money was due to Blades long before he conveyed to Mooring & Lyon.

There is evidence that Mooring & Lyon knew of the purchase by the appellants at sheriff's sale, prior to their purchase from Blades; and there is evidence tending to show that they may have purchased from Blades under some agreement that B. A. Banguss was in some way to be benefited thereby; but how such benefit was to accrue is not made to appear. The evidence, however, in reference to this matter, is conflicting. That Mooring & Lyon paid to Blades $1,000 for the land, which, with the improvements thereon, was worth more, is made clearly to appear, as was it that the money so paid was the money of Mooring & Lyon.

It is probably true that the court below, in the various charges relating to the character of proof necessary to be made by the plaintiffs, may have given to the jury rules liable to be misappre-

hended. In civil cases juries should ordinarily find in accordance with the preponderance of the evidence, and a charge which requires a plaintiff to make "satisfactory evidence," or "clear and satisfactory evidence," may be understood to mean a higher degree of proof than is furnished by a preponderance of the evidence, and this is especially true when charges containing such language are often repeated.

The practice of giving special instructions when the same matters have been given in the general charge, is not one to be commended, but unless the charges so given are erroneous, or in form objectionable, this furnishes no ground for reversal. The charge of the court, in reference to the right of a vendor who has given a bond to make title to land on the payment of the purchase money when due, on failure of the vendee to make such payment, to rescind the contract and sell the land to another, was substantially correct in view of the issues made by the pleadings and the evidence. It is not believed, in view of the evidence, that the court below erred in giving the charge referred to in the fifth assignment of error.

If counsel for appellants were of the opinion that the charge of the court did not fully present the law applicable to the case made by the pleadings and evidence, they should have asked such instructions as they thought applicable.

The rejection of the testimony of the witness Henry, if admissible at all, was not calculated to prejudice the right of the plaintiffs, for there was full proof of and no controversy about the facts which his evidence went to establish, in so far as they could have been material. It does not follow, however, because technical errors may have been committed on the trial that the judgment will be reversed, for if upon the pleadings and evidence no other judgment than that rendered could legally have been rendered no injury has been done, and the judgment must be affirmed.

The plaintiffs show by their pleadings, as well as by the evidence, that they only have such rights as had B. A. Banguss at the time they bought at sheriff's sale. They show that at most Banguss, prior to that time, had made an executory contract to purchase the land, the terms upon which he was to have title to it being that he would pay to Blades, his vendor, $1,250 therefor within twelve months after the contract was made, which was in December, 1871. They show also that only $450 of the purchase money had been paid by Banguss at the time they purchased, which was on the first Tuesday in October, 1873. Under this state of facts are they entitled to recover against

Mooring & Lyon, or any person holding under them? Would they be entitled to recover even against B. A. Banguss, had he, subsequent to their purchase at sheriff's sale, paid the balance due on the purchase money and taken a deed from Blades? It would seem that the plaintiffs under their pleadings and evidence would not be entitled to recover even as against Banguss, were he clothed with the legal title, for as against him they would not exhibit any superior right. The right which the plaintiffs acquired, at most, was but the right to have title to the land by paying the balance due for it. That was the only interest Banguss had when they purchased, and they surely acquired no right by their purchase other or greater than had the debtor whose interest was sold. And this was subject to be defeated by the failure of Banguss or his vendees to pay the purchase money still due, for upon such failure it was the right of Blades to rescind the contract made with Banguss and to sell the land to some other person, or even to him.

A title subsequently acquired by Banguss would not enure to the benefit of those who had purchased whatever equitable interest he had at the time of the sheriff's sale, as would such subsequently acquired title enure to the benefit of one to whom Banguss might have conveyed the land by deed with warranty of title. So we think it immaterial, so far as the question of the right of the appellants to recover under the pleadings and evidence in the cause is concerned, whether Mooring & Lyon purchased the land in good faith with their own means and for their own exclusive benefit; whether they purchased with the money of Banguss and took deeds in their own names, or whether they bought with their own means under some agreement with Banguss to hold for his benefit; for, be this as it may, the legal title so acquired is superior to any title or right alleged or proved by appellants, and the equities of the defendants, Mooring & Lyon, and those claiming under them, are as strong as any asserted by the plaintiffs. If Blades was in possession of the land, and had not conveyed the legal title to Mooring & Lyon, and this action was against him alone, the plaintiffs could not recover unless they tendered to him the balance of the purchase money, and showed some good reason why it was not sooner paid. Blades, by conveying to Mooring & Lyon, indicated his intention to rescind the contract claimed to have been made with Banguss; and his vendees, even if they had notice of that contract, had rights certainly equal to those Blades had prior to the conveyance, and it would be necessary for the plaintiffs to have paid the purchase money, or to have shown some good reason why they did not, and to tender it before they could recover.

This they do not, although many years have elapsed since the money was due. If Banguss, after the sale made by the sheriff, had paid the balance of the purchase money and obtained a deed from Blades, or if Mooring & Lyon had done this for him and held the title for his benefit, the plaintiffs would have had the right to pay the balance of the purchase money, and have title under the same circumstances as they would had Blades not conveyed, but this would be the extent of their right. In any event they would have to pay or tender the balance of the purchase money, for one holding under Blades has all the rights he had. If Mooring & Lyon bought the land from Blades, even with notice of the prior contract claimed to have been made with him by Banguss, with their own means and without any agreement with Banguss which would make them hold in trust for him, then, under the pleadings, their title was good and not subject to be divested by Banguss or any one claiming under him, even on the tender of the balance of the purchase money due by Banguss.

The uncontroverted evidence, however, shows that Banguss never had any real interest in the land; for it was purchased for his wife with the intention that it should be paid for with her separate means, and all the money paid on it prior to the purchase by the plaintiffs is shown to have been of her separate estate. As against her, the plaintiffs took nothing by their purchase, even if they had no notice of her rights at the time of their purchase, for it is not shown that they paid value. McKamey v. Thorp, 61 Tex., 648.

There was a demurrer filed in this cause, but it does not appear to have been acted upon by the court below, and upon a former appeal by the appellees the questions now considered were not noticed, the judgment being reversed on other grounds; but as it now appears to us that no other judgment than that rendered could have been rendered on the pleadings and evidence, the judgment must be affirmed. It is so ordered.

AFFIRMED.

[Opinion delivered October 27, 1885.]